In re Raymond CERVANTES, Debtor.

Santa Cruz County, Appellant,

v.

Raymond Cervantes, Appellee.

BAP No. NC–97–1822–RyKMe.
Bankruptcy No. 96–56831–JRG.
Adversary No. 97–5046.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 22, 1998.

Decided Dec. 31, 1998.

Mary Roth, Deputy Attorney General, San Francisco, CA, for County of Santa Cruz.

Andrew M. Lauderdale, Lauderdale Law Offices, Monterey, CA, for Raymond Cervantes.

Before: RYAN, KLEIN, and MEYERS, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

Chapter 13 debtor Raymond Cervantes ("Debtor") filed a complaint (the "Complaint") to determine the dischargeability of his child support obligations owed to creditor Santa Cruz County ("County"). The bankruptcy court held that the support arrearages that accrued after the entry of a state court paternity and child support judgment (the "Judgment") were nondischargeable, but that the support arrearages that were assigned to County as a condition of receiving public assistance prior to entry of the Judgment were dischargeable. With respect to the pre-Judgment support arrearages, the bankruptcy court held that the nondischargeability provisions of Bankruptcy Code (the "Code")[1] §§ 523(a)(5) and 1328(a) did not apply.

County appeals that portion of the order for summary judgment providing that pre-

Judgment support arrearages assigned to County were dischargeable. We AFFIRM.

## I. FACTS

The stipulated facts set forth in the bankruptcy court's published decision, *Cervantes v. Santa Cruz County (In re Cervantes)*, 212 B.R. 643 (Bankr.N.D.Cal.1997), are summarized below. In March 1993, Monica Samudio applied for Aid to Families with Dependent Children ("AFDC") on behalf of her minor daughter, Samantha Cervantes. As a condition for receiving AFDC, Monica assigned to County all rights to support from Debtor that she had on behalf of herself or Samantha pursuant to California Welfare and Institutions Code ("CW & IC") § 11477 and the Social Security Act, 42 U.S.C. § 602(a)(26)(A). At that time, Samantha's paternity had not been legally established.

In October 1994, County obtained the Judgment against Debtor in state court. The state court ordered Debtor to make prospective child support payments in the amount of $219 per month (the "post-Judgment arrearages") and to reimburse County $4,161 for child support arrearages covering the period from March 1993 through September 1994 (the "pre-Judgment arrearages").

On September 11, 1996, Debtor filed a chapter 13 bankruptcy petition. County subsequently filed the Complaint to determine the dischargeability of the pre- and post-Judgment arrearages under § 523(a)(5). Both parties filed cross motions for summary judgment. The bankruptcy court held that the post-Judgment arrearages were nondischargeable under § 523(a)(5). However, the court held that the pre-Judgment arrearages owed to County were dischargeable because neither Monica nor Samantha had any accrued rights to assign prior to the entry of the Judgment. *See Cervantes*, 212 B.R. at 647–48. County filed a timely notice of appeal of the order on cross motions for summary judgment (the "Order"). County appeals that portion of the Order holding that the pre-Judgment arrearages were dischargeable.

---

1. The Code is set forth in 11 U.S.C. §§ 101–1330 (1998).

## II. ISSUES[2]

A. Whether the bankruptcy court erred when it refused to discharge the pre-Judgment arrearages under § 523(a)(5)(A).

B. Whether a nondischargeable debt under § 523(a)(18) is dischargeable in chapter 13.

## III. STANDARD OF REVIEW

■ We review issues of statutory interpretation, which are questions of law, de novo. *See County of El Dorado v. Crouch (In re Crouch)*, 199 B.R. 690, 691 (9th Cir. BAP 1996).

■ Similarly, we review rulings on summary judgment de novo. *See Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone)*, 132 B.R. 632, 637 (9th Cir. BAP 1991).

## IV. DISCUSSION

County argues that the bankruptcy court erred in determining that the pre-Judgment arrearages were dischargeable because the 1991 amendment to CW & IC § 11350 gave Monica and Samantha a right to support for the period preceding the date that the Judgment was entered, and thus, the assignment of this right to County was valid and nondischargeable under § 523(a)(5)(A). Additionally, County asserts that Congress's failure to include debts of a kind described in § 523(a)(18) in the nondischargeability provision of chapter 13 was inadvertent, and thus, such debts should be nondischargeable in a chapter 13 plan.

A. *The Bankruptcy Court Did Not Err In Holding That The Pre–Judgment Arrearages Were Not Excluded From Discharge Under § 523(a)(5)(A).*

The bankruptcy court held that the pre-Judgment arrearages did not fall within the exception to discharge provided for under § 523(a)(5)(A). The version of § 523(a)(5)(A) that applies to this case provides in pertinent part:

A discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (*other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 U.S.C. § 602(a)(26)]*, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State).

11 U.S.C. § 523(a)(5)(A)(1995) (emphasis added).[3]

■ As the emphasized language indicates, if a debt for alimony or support of a spouse or child of the debtor is assigned to another entity, the debt is dischargeable, unless the debt is assigned pursuant to 42

---

2. County raises an additional argument for the first time on appeal that the nondischargeability provision of 42 U.S.C. § 656(b) is an independent nondischargeability provision that trumps the nondischargeability provision of § 1328(a). Although County quoted 42 U.S.C. § 656(b) together with § 523(a)(5)(A) for the proposition that assigned support arrearages were nondischargeable, County did not assert that 42 U.S.C. § 656(b) provided an independent basis for nondischargeability that trumps § 1328(a). In addition, neither party referred to 42 U.S.C. § 656(b) as a basis for nondischargeability at the April 24, 1997 hearing on the cross motions for summary judgment. Furthermore, the bankruptcy court's opinion does not address this argument. We will not consider issues raised for the first time on appeal. *See Concrete Equip., Co. v. Fox (In re*

*Vigil Bros. Constr., Inc.)*, 193 B.R. 513, 520 (9th Cir. BAP 1996).

3. On August 22, 1996, Congress deleted the reference in § 523(a)(5) to "section 402(a)(26)" of the Social Security Act and inserted "section 408(a)(3)" of the Social Security Act. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193 (Aug. 22, 1996). However, the amendments to § 402(a)(26) of the Social Security Act (42 U.S.C. § 602(a)(26)), and to section 408(a)(3) of the Social Security Act (42 U.S.C. § 608(a)(3)), did not become effective until July 1, 1997—after Debtor filed his bankruptcy petition. Thus, we do not decide the effect of these amendments on § 523(a)(5)(A) in this case.

U.S.C. § 602(a)(26). *See* 11 U.S.C. § 523(a)(5)(A); *Visness v. Contra Costa County*, 57 F.3d 775, 776 (9th Cir.1995), *cert. denied*, 516 U.S. 1099, 116 S.Ct. 828, 133 L.Ed.2d 770 (1996). Under 42 U.S.C. § 602(a)(26),[4] a state participating in the AFDC program must condition eligibility for AFDC aid on an applicant's assignment to the state of any support rights which have *accrued* at the time such assignment is executed. *See Visness*, 57 F.3d at 776 (citing 42 U.S.C. § 602(a)(26)).[5] These assigned support rights become an obligation owed to the state by the individual responsible for support. *See* 42 U.S.C. § 656(a)(1995).

■ In *Visness*, a case involving facts virtually identical to the facts here, the Ninth Circuit held that a debt, established by a county under CW & IC § 11350 and assigned under 42 U.S.C. § 602(a)(26) and California's implementing statute, CW & IC 11477(a), was nondischargeable under § 523(a)(5)(A) only if the debtor's child, spouse, or former spouse had *accrued* support rights at the time of the assignment. *See Visness*, 57 F.3d at 778, 780–81 (citing *County of Santa Clara v. Ramirez (In re Ramirez)*, 795 F.2d 1494,

1496–98 (9th Cir.1986), *cert. denied*, 481 U.S. 1003, 107 S.Ct. 1624, 95 L.Ed.2d 198 (1987)). The *Visness* court, reaffirming the *Ramirez* holding, concluded that support rights do not accrue in favor of a child under California law and are not assignable "until a court decree or agreement establishes the noncustodial parent's support duty." *Id.* at 779 (citing *Ramirez*, 795 F.2d at 1497, 1498 n. 3).[6] Because the assignment occurred before the debtor's parental support obligations were established under California law, the debt did not represent an assignment of rights that had *accrued* to a "spouse, former spouse, or child of the debtor." *Id.* at 780–81. Consequently, the court held that the debt was not excluded from discharge under § 523(a)(5)(A). *Id.*

### The 1991 Amendment To CW & IC § 11350 Is Irrelevant To The Facts Of This Case.

■ County argued before the bankruptcy court that the 1991 amendment to CW & IC § 11350 eliminated the conceptual foundation of *Visness*—that under California law, a custodial parent and child did not have a right to

---

4. Section 602(a)(26) provides in pertinent part:
    A State plan for aid and services to needy families with children must ... provide that, as a condition of eligibility for aid, each applicant or recipient will be required ... to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) *which have accrued at the time such assignment is executed.*
    42 U.S.C. § 602(a)(26)(1995)(emphasis added).

5. California has implemented the directives set forth in 42 U.S.C. § 602(a)(26) by passing CW & IC § 11477(a), which requires the AFDC applicant to assign all "accrued" support rights to the state. *See* Cal. Welf. & Inst. Code § 11350 (West Supp.1998).

6. We note that California Family Code § 4009 provides that "[a]n order for child support may be made *retroactive to the date of filing the notice of motion or order to show cause*, or any subsequent date, or any subsequent date, except as provided by federal law ...." Cal. Fam. Code § 4009 (West 1994)(emphasis added). In 1992, this statute repealed and superceded California Civil Code § 4700(a), which was substantively identical to California Family Code § 4009. *See County of Santa Clara v. Perry*, 18 Cal.4th 435, 75 Cal.Rptr.2d 738, 956 P.2d 1191, 1195 (Cal.1998).

Although the Ninth Circuit in *Visness* cited *In re Marriage of Goosmann*, 26 Cal.App.4th 838, 844, 31 Cal.Rptr.2d 613 (1994), for the longstanding general rule in California that an order for child support operates prospectively, *see Visness*, 57 F.3d at 779, it did not address *Marriage of Goosmann's* holding that an original child support order could operate retroactively if the party seeking child support makes a formal request in a notice of motion or order to show cause. *See Marriage of Goosmann*, 26 Cal. App.4th at 843–45, 31 Cal.Rptr.2d 613 (citing Former Cal Fam. Code § 4007(a)).

Similarly, we need not consider the effect of California Family Code § 4009 because neither party raised this issue before the trial court or on appeal and there is no evidence in the record that a formal notice of motion or order to show cause was filed. *See Perry*, 75 Cal.Rptr.2d 738, 956 P.2d at 1194–98 (holding that child support can only be made retroactive to the filing of the notice of motion for judgment or order to show cause, and not to the filing of the original complaint); *Marriage of Goosmann*, 26 Cal.App.4th at 845, 31 Cal.Rptr.2d 613 ("The party seeking child support ... must make a formal request [for retroactive support] by procedurally correct means, and then the support order may be made retroactive to that proper formal request.").

support that could be assigned prior to the date a support order was obtained. The bankruptcy court rejected County's argument and held: (1) the amendment to CW & IC § 11350 did not cause the pre-Judgment arrearages to be a debt owed to a spouse, former spouse, or child of the debtor as required by § 523(a)(5); and (2) CW & IC § 11350 did not provide for retroactive assignment of support rights.[7] *See Cervantes,* 212 B.R. at 648.

In 1991, the California legislature amended CW & IC § 11350 to provide as follows:

(a) In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to that family, the noncustodial parent or parents *shall be obligated to the county* for an amount equal to the following:

(1) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; *or* in the absence of such court order, the amount specified in paragraph (2).

(2) The amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but · disbursed to the family . . . .

CAL. WELF. & INST. CODE § 11350(a)(West Supp.1998)(emphasis added).[8] As County correctly notes, the Ninth Circuit in *Visness* did not address the change in CW & IC § 11350.

County contends that the 1991 amendment to CW & IC § 11350 provided *the custodial parent and child* "with new and significant

statutory rights to support, defined as the amount of support (money) which would have been ordered pursuant to the California child support guideline from the date of separation of the noncustodial parent from his child." Appellant's Reply Br. 6 (citing CAL. WELF. & INST. CODE § 11350(a)(2)). Thus, according to County, because the custodial parent and child now have a right to support before the date a support order is obtained, such right accrues on the date that the noncustodial parent separated from the child and can be assigned to County. We reject County's argument because the 1991 amendment to CW & IC § 11350 is irrelevant to the issue before us.

The 1991 amendment to CW & IC § 11350 changed the amount of support that a noncustodial parent owes the county *in the absence of a court order. See* CAL. WELF. & INST. CODE § 11350(a)(1). Here, a child support order was entered. Under both versions of CW & IC § 11350, the noncustodial spouse is obligated to the county for "[t]he amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction." CAL. WELF. & INST. CODE § 11350(a)(1) (West Supp.1998); CAL. WELF. & INST. CODE § 11350(a) (West 1991). Thus, the amount owed by Debtor to County falls under CW & IC § 11350(a)(1), which is identical to CW & IC § 11350(a) as it existed prior to the amendment. In consequence, the amendment to CW & IC § 11350 does not affect the outcome of this proceeding, and we are bound by the Ninth Circuit's determination that a custodial parent's or child's right to support does not accrue until a court order establishing a support obligation is entered. *See Visness,* 57 F.3d at 779–81 (and California cases cited therein);

---

7. County does not challenge the bankruptcy court's finding that CW & IC § 11350 did not provide for retroactive support rights.

8. Prior to the 1991 amendment, CW & IC § 11350 read in pertinent part:

In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to:

(a) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; *or in the absence of such court order,*

(b) *The amount of aid paid to the family during such period of separation or desertion* limited by such parent's reasonable ability to pay during that period in which aid was granted. . . .

CAL. WELF. & INST. CODE § 11350 (West 1991).

*Ramirez,* 795 F.2d at 1497, 1498 n. 3 (and California cases cited therein).

Additionally, CW & IC § 11350(a)(2) cannot be used to collaterally attack a court order establishing the amount of child support owed to a county by a noncustodial parent. As previously stated, the calculation of the amount of support specified in CW & IC § 11350(a)(2) only applies in the absence of a court order. To permit County to fix the amount owed by the noncustodial spouse pursuant to CW & IC § 11350(a)(2) after the Judgment had been entered would effectively circumvent the binding effect of the Judgment. The California legislature clearly intended to set the amount owed to a county under CW & IC § 11350(a)(2) only in cases where there is no child support order. Consequently, the amendment to CW & IC § 11350 did not give Samantha or Monica accrued support rights beyond the Judgment and applicable California law.[9]

B. *The Bankruptcy Court Did Not Err In Determining That The Addition Of § 523(a)(18) By The 1996 Welfare Reform Act Did Not Make The Pre–Judgment Support Arrearages Nondischargeable In Chapter 13.*

■ County argues that the bankruptcy court erred in concluding that § 523(a)(18), which makes a debt "in the nature of support" and "enforceable under Part D of title IV of the Social Security Act (42 U.S.C. 601 et. seq.)" nondischargeable, did not apply in chapter 13 cases. County further asserts that Congress's failure to include § 523(a)(18) in the nondischargeability provision of chapter 13 was inadvertent and that Congress clearly intended to make all debts in the nature of support owed to a state or municipality under the Social Security Act nondischargeable throughout the Code, including chapter 13.

The bankruptcy court rejected County's argument after concluding that "had [Congress] intended to make debts under Code § 523(a)(18) nondischargeable in Chapter 13

cases, it would have added § 523(a)(18) as an exception to a debtor's 'superdischarge' under § 1328(a), as it did, for example, with § 523(a)(5)." *Cervantes,* 212 B.R. at 648. We adopt the bankruptcy court's reasoning and conclude that the pre-Judgment arrearages are dischargeable in chapter 13.

## CONCLUSION

In sum, the bankruptcy court, following *Visness,* correctly held that the pre-Judgment arrearages were not excluded from discharge under § 523(a)(5)(A) despite the 1991 amendment to CW & IC § 11350. The amendment to § 11350 is irrelevant here because the state court entered an order establishing Debtor's child support obligations. Thus, the assignment prior to the entry of the Judgment did not convey to County any "accrued" rights as required by 42 U.S.C. § 602(a)(26) and § 523(a)(5)(A).

In addition, the bankruptcy court correctly determined that § 523(a)(18) did not cause the pre-Judgment arrearages to be nondischargeable in the chapter 13 case.

Accordingly, we AFFIRM.

KLEIN, Bankruptcy Judge, dissenting.

I dissent from the affirmance of the trial court's summary judgment declaring that the $4,161 child support arrearage is discharged in bankruptcy because it was based on an inadequate summary judgment record and would remand for further proceedings.

While the trial court did an admirable job of analyzing a complex issue, the facts to which the parties stipulated in their cross-motions for summary judgment are inadequate to establish that either party is "entitled to a judgment as a matter of law" as required by Civil Rule 56(c). There is neither evidence establishing the terms of the assignment(s) executed by Monica Samudio nor evidence of when the child support action was filed in state court, without which it is impossible to apply the facts to the law.

---

9. Because a support order was entered in this case establishing Debtor's liability to County for pre-Judgment arrearages, we do not reach the issue of whether the amended CW & IC

§ 11350(a)(2) undermines the Ninth Circuit's holding in *Visness* when no support order as specified in CW & IC § 11350(a)(1) is entered.

My disagreement with the majority ultimately revolves about our differing perceptions of the assignments in question. I see them as contracts and read the key decisions as being grounded on contractual analysis, while the majority assumes that they are made by operation of law.

Since case law emphasizes the importance of the precise terms of the assignment contracts, it is essential that the summary judgment record be supplemented to include the actual terms of the written assignments executed by Monica Samudio when she first applied for public assistance on March 18, 1993, and all others she executed before the child support judgment was entered by the state court on October 1994. It is also important to know when the state court action was actually filed because there is a California statute that permits otherwise prospective child support orders to relate back to the date the action is filed.

## I

The answer to the question whether a debt assigned to a county in consequence of the federally-supported Aid to Families with Dependent Children ("AFDC") program is nondischargeable in chapter 13 bankruptcies under 11 U.S.C. § 523(a)(5) or any other provision of law requires one to navigate a labyrinth of five different versions of Bankruptcy Code § 523(a)(5), two versions of the Social Security Act, two versions of California Welfare & Institutions Code § 11350, California Family Code § 4009, and the Ninth Circuit decisions in *County of Santa Clara v. Ramirez (In re Ramirez)*, 795 F.2d 1494 (9th Cir.1986), and *Visness v. Contra Costa County (In re Visness)*, 57 F.3d 775 (9th Cir.1995).

An inventory of the various versions of the statutes is essential.

## A

### 11 U.S.C. § 523(a)(5)

The Bankruptcy Code's primary nondischargeability provision relating to child support is § 523(a)(5). Child support debts that are excepted from discharge under § 523(a)(5) are also excepted from the chapter 13 discharge. 11 U.S.C. § 1328(a).

There have been five different versions of § 523(a)(5) since 1978.

#### 1

Version I covered only support based on a separation agreement, divorce decree, or property settlement agreement and excluded all assigned debts. Only debts owed directly to the child or to the custodial parent would be excepted from discharge:

(a) A discharge ... does not discharge an individual debtor from any debt—... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1978 version).

#### 2

Version II, enacted in 1981,[10] carved out an exception to the exclusion of assigned debts to make nondischargeable those AFDC debts required to be assigned under now-former Social Security Act § 402(a)(26) (formerly codified at 42 U.S.C. § 602(a)(26)):

(a) A discharge ... does not discharge an individual debtor from any debt—... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise *(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act)*; or (B) such debt includes a liability designated as alimony, maintenance, or

---

**10.** In this dissent, the different versions of the statute are indicated by different typefaces.

support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1981 version).

This was the version that figured in the Ninth Circuit's *Ramirez* decision.

### 3

Version III, enacted in 1984, made two changes. It added orders of courts of record as a qualifying source for nondischargeable support. And it added an additional exception to the assignment exclusion designed to cover any support debt assigned to a governmental entity:

(a) A discharge ... does not discharge an individual debtor from any debt—... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree *or other order of a court of record,* or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise *(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State);* or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1984 version).

### 4

Version IV, enacted in 1986, added certain nonjudicial support determinations as another source of a support obligation excepted from discharge:

(a) A discharge ... does not discharge an individual debtor from any debt—... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree *or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit,* property settlement agree-

ment, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise *(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State);* or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1986 version).

This was the version that figured in the Ninth Circuit's *Visness* decision.

### 5

Version V, enacted in 1996, changed the cross-reference to the Social Security Act—from § 402(a)(26) to § 408(a)(3)—in order to mirror revisions to the Social Security Act. This version actually came in two phases because the amendment to § 523(a)(5) took effect on August 22, 1996, but new Social Security Act § 408(a)(3) did not take effect until July 1, 1997:

(a) A discharge ... does not discharge an individual debtor from any debt—... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree *or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit,* property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity,. voluntarily, by operation of law, or otherwise *(other than debts assigned pursuant to section ~~402(a)(26)~~ 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State);* or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1996 version).

This appeal involves the first phase of this version, i.e. the period between August 22,

1996, and July 1, 1997, when the cross-reference to Social Security Act § 408(a)(3) was a reference to nothing.

## B

### *Social Security Act Nondischargeability*

An independent exception to discharge is buried in the Social Security Act. It requires that two sections be read together and has had two versions during the life of the Bankruptcy Code.

Until July 1, 1997, the pertinent sections were § 402(a)(26) relating to assignments and § 456(b):

§ 302(a)(26). [Every applicant for AFDC shall] assign the State any rights to support ... which *have accrued* at the time the assignment is executed.

42 U.S.C. § 602(a)(26) (repealed 1997) (emphasis supplied).

§ 456(b). A debt which is a child support obligation assigned to a State under section 402(a)(26) of this act is not released by a discharge in bankruptcy under Title 11.

42 U.S.C. § 656(b) (amended 1997).

This is the language that figured in the Ninth Circuit's decisions in *Ramirez* and in *Visness*. And it applies in this appeal.

Effective July 1, 1997, the pertinent sections are § 408(a)(3) and § 456(b):

§ 408(a)(3). A State ... shall require, as a condition of providing assistance ..., that a member of the family assign to the State any rights the family member may have (on behalf of the family member or any other person for whom the family member has applied for or is receiving such assistance) to support from any person, not exceeding the total amount of assistance so provided to the family, *which accrue (or have accrued) before the date the family leaves the program* ....

42 U.S.C. § 608(a)(3)(A) (emphasis supplied).

§ 456(b). A debt (as defined in section 101 of title 11 of the United States Code) owed under State law to a State (as defined in such section) or municipality (as defined in such section) that is in the nature of support and that is enforceable under this part is not released by a discharge in bankruptcy under title 11 of the United States Code.

42 U.S.C. § 656(b).

## C

### *California Welfare & Institutions Code § 11350*

California Welfare & Institutions Code § 11350 deals with the obligation of noncustodial parents of children to reimburse counties for AFDC payments. It was amended effective January 1, 1992.

Noncustodial parents must pay to the county either the amount of support specified in a court order or the sum specified in § 11350.

Before January 1, 1992, the required payment was:

[t]he amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted;

CAL. WELF. & INST. CODE § 11350(b) (West 1991).

Effective January 1, 1992:

[t]he amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but disbursed to the family;

CAL. WELF. & INST. CODE § 11350(a)(2) (West Supp.1998).

The ostensible reason for the amendment was an effort to deal with the manner in which *Ramirez* dealt with "accrual" of support rights.

## D

### *California Family Code § 4009*

California Family Code § 4009, formerly California Civil Code § 4700, dealing with retroactivity of child support orders, has provided since January 1, 1993, that:

An order for child support may be made retroactive to the date of filing the notice of motion or order to show cause, or any subsequent date, except as provided by federal law.

CAL. FAM. CODE § 4009 (West 1994).

This provision squares with California decisional law. The leading California case is *In re Marriage of Goosmann*, 26 Cal.App.4th 838, 31 Cal.Rptr.2d 613 (Cal.Ct.App.1994). *In that case, a retroactive child support award was reversed to the extent that it was retroactive to a date before the proceeding requesting child support was initiated. Thus, retroactivity was reduced from thirty-four months to ten months: "We hold that an original child support order may be retroactive only to the date of the filing of the motion for support or to the date of the order to show cause seeking child support."* Goosmann, *26 Cal.App.4th at 839, 31 Cal.Rptr.2d 613.*

## II

The majority relies heavily on the Ninth Circuit's *Visness* opinion. *Visness*, 57 F.3d 775. But the majority is not accurate when it says that *Visness* concluded that support rights "are not assignable 'until a court decree or agreement establishes the noncustodial parent's support duty.'" Rather, *Visness* holds that if one assigns rights that "have accrued" as of the date of the assignment, then nothing is assigned where all rights accrue after the date of the assignment.

As the *Visness* opinion is somewhat opaque and has proved confusing to litigants and courts, it is worth winnowing the holding from the dicta so that we can be precise about what propositions are settled by *Visness*.

### A

*Visness* can only be understood against the backdrop of the Ninth Circuit's earlier *Ramirez* decision. *County of Santa Clara v. Ramirez (In re Ramirez)*, 795 F.2d 1494 (9th Cir.1986).

*Ramirez* addressed two independent theories of nondischargeability for child support—11 U.S.C. § 523(a)(5) (Version II) and Social Security Act § 456(b)—and concluded that the AFDC reimbursement obligation was discharged.

The facts were straightforward. Mrs. Ramirez assigned child support rights in 1979. The county sued Mr. Ramirez in 1980 seeking AFDC reimbursement and a determination of future support obligations. The state court, in 1981, entered judgment requiring Mr. Ramirez to pay child support thenceforth and ordered him to reimburse the county for prior AFDC payments. Mr. Ramirez filed a chapter 7 bankruptcy in 1982 and prosecuted an adversary proceeding seeking a determination·that the AFDC reimbursement obligation was discharged.

#### 1

The *Ramirez* theory of nondischargeability under 11 U.S.C. § 523(a)(5) involved version II of that statute, which is set forth in the margin.[11]

The § 523(a)(5) issue was easily resolved. The AFDC reimbursement obligation did not qualify for exception from discharge under § 523(a)(5) because there was neither a separation agreement, nor a divorce decree, nor a property settlement agreement as required by that section. Without one of those three items, there was no qualifying source for nondischargeable child support. The court order did not suffice. It was not until Version III (which had already been enacted at the time *Ramirez* was decided) that a court

---

11. Version II of § 523(a)(5) provided that the discharge:

(a) A discharge ... does not discharge an individual debtor from any debt—... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the ex-

tent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise *(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act);* or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1981 version).

order qualified as a source for nondischargeable status.

### 2

After concluding that § 523(a)(5) did not except the debt from discharge, the Ninth Circuit also found it necessary to consider the separate nondischargeability provision at Social Security Act § 456(b). 42 U.S.C. 656(b).

An applicant for AFDC must execute an assignment that meets minimum standards specified in the Social Security Act, and the assigned debt is nondischargeable in bankruptcy by virtue of Social Security Act § 456(b). The assignment requirement, until July 1, 1997, was an assignment of: "any rights to support ... which *have accrued* at the time the assignment is executed." 42 U.S.C. § 602(a)(26) (repealed 1997) (emphasis supplied). In contrast, the new regime requires assignment of support rights that accrue before the family leaves the AFDC program.[12]

The Ninth Circuit treated Social Security Act § 456(b) as valid and proceeded with an analysis that hinged on a combination of contract and California law. In the end, it concluded that what Mrs. Ramirez had assigned was zero.

The *Ramirez* assignment, which merely parroted the statutory requirement ("rights to support ... which have accrued at the time the assignment is executed") without including any broader assignment, was treated as a contract. The AFDC recipient is the assignor. The county is the assignee.

The question then shifted to identifying the rights to support that had already accrued when the assignment was executed.

The Ninth Circuit concluded that California law does not impose assignable child support rights against a noncustodial parent without a formal judicial determination. As the action against Mr. Ramirez seeking such a determination was not even filed until nine months after Mrs. Ramirez executed the assignment, what was assigned was—nothing.

The Ninth Circuit did not view the pre–1992 version of California Welfare & Institutions Code § 11350 as compelling a different result. It is a naked statutory command that the noncustodial parent pay the county the amount the county paid in aid. It exists regardless of whether anyone ever executes an assignment. It creates no right that the child or noncustodial parent could assign.

The assigned AFDC debt may have been excepted from discharge by virtue of Social Security Act § 656(b), but the assigned debt was zero.

### B

*Visness* presented the same basic facts as *Ramirez*. AFDC assignments were made in 1984 and 1985, AFDC participation ended in September 1987, and a court order for future child support and for AFDC reimbursement was entered in November 1987. Bankruptcy was filed in 1992.

What had changed from the time of *Ramirez* was that version IV of § 523(a)(5) was effective, instead of version II. There were two pertinent changes.

First, court orders had been added as a qualifying source for nondischargeable child support payments, thereby eliminating one of the barriers that had existed in *Ramirez*.

Second, there was an additional safe harbor to the exclusion of assigned support debts at § 523(a)(5)(A): "or any such debt which has been assigned to the Federal Government or to a State or political subdivision of such State". While this swept in more than AFDC assignments, it still left the focus on assignments.

The Ninth Circuit applied the same contractual analysis as in *Ramirez*. It looked at the language of the contract assigning the

---

12. The new provision is:

   A State ... shall require, as a condition of providing assistance ..., that a member of the family assign to the State any rights the family member may have (on behalf of the family member or any other person for whom the family member has applied for or is receiving such assistance) to support from any person, not exceeding the total amount of assistance so provided to the family, *which accrue (or have accrued) before the date the family leaves the program* ....
   42 U.S.C. § 608(a)(3)(A) (emphasis supplied).

rights, which contract continued to contain the AFDC minimum of support rights that "have accrued at the time" the assignment is executed. The question then became a quest to identify what, if anything, had accrued at the time of the final assignment in March 1985. California law still required formal judicial determination, which was not to come until November 1987. Hence, as in *Ramirez,* the answer was—nothing.

To be sure, the *Visness* decision was imprecise about describing the two distinct prongs of § 523(a)(5)(A) and omitted mention of Social Security Act § 456(b). That imprecision has made *Visness* difficult to read and has confused courts and litigants. But the *Visness* court did not need to be precise in this respect because all three nondischargeability theories require that there be contracts of assignment that actually assign something. Since no rights had accrued as of the date of executing a contract that purported to assign only those rights that have already accrued, nothing was assigned.

Thus, *Visness* and *Ramirez* both stand for the proposition that assignments are contracts to be analyzed according to their particular terms. In both cases, the assignment was only of rights that had accrued as of a particular date and no rights have accrued as of that date. Hence, nothing was assigned. If something actually had been assigned under the facts of *Visness* and *Ramirez,* then the results would have been different.

### III

The majority overlooks much that has changed since the time of the operative facts in *Ramirez* and *Visness.*

### A

By 1989, California was using a standard form contract of assignment that was considerably broader than the minimum required by the Social Security Act. The new form covered both AFDC and medical assistance under the Medi–Cal program and was not limited to rights that had accrued as of the date of its execution.

Rather than a single assignment at the outset of participation in the AFDC program, the aid recipient agrees in form CA 2.1 to make regular assignments in connection with receiving each check. Specifically, the operative language of assignment includes the recipient's agreement that: "receipt of an AFDC check and/or a Medi–Cal card will assign the past and present support rights of all persons for whom [the recipient is] requesting AFDC and/or Medical Assistance." Cal. Health & Welfare Agency, Dept. of Social Services Form 2.1 (12/89).

Under this contractual regime, the aid recipient agrees that each receipt—or more accurately, negotiation—of an AFDC check constitutes a separate assignment that sweeps in support rights accrued through that date.

This form assignment was being used in California counties in 1993 and 1994, which is the period that matters in this appeal. *See Patterson v. County of El Dorado, Family Support Div.,* Findings of Fact and Conclusions of Law, at p. 2, Adv. No. 96–2402 (Bankr.E.D. Cal. filed March 25, 1997).

Without the actual terms of the assignment in the summary judgment record, it is impossible to make a determination that is faithful to *Ramirez* and *Visness.*

### B

Child support obligations in California can accrue retroactively to the date that the action seeking support was filed. Cal. Family Code § 4009; *In re Marriage of Goosmann,* 26 Cal.App.4th 838, 31 Cal.Rptr.2d 613 (Cal. Ct.App.1994) (child support obligation retroactive to date of request to court).

Although there is some ambiguity in the current version of the statute, it is not clear that older decisions under predecessor statutes have lost all vitality when they were modernized. The leading treatise on California law continues to cite them with approval. *Richter v. Superior Court,* 214 Cal.App.2d 821, 29 Cal.Rptr. 826 (Cal.Ct.App.1963) (court has power to award support and costs from date of filing complaint in filiation proceeding), *cited with approval,* 10 B. WITKIN, SUMMARY OF CALIFORNIA LAW: PARENT & CHILD §§ 406 & 429 (9th ed.1989); *Kyne v. Kyne,* 38 Cal.App.2d 122, 100 P.2d 806 (Cal.

Ct.App.1940) (same), *cited with approval,* 10 B. WITKIN, *id.* Nor have those decisions been repudiated.

The accurate statement of California law is: child support awards are presumptively prospective but can be made retroactive to the date the court is asked to award support.

The *Visness* court did not consider, and did not need to consider, Family Code § 4009 or its predecessors. No issue of retroactive accrual of child support was presented by the facts of those cases.

The majority cites *Goosmann* indirectly by citing the portion of *Visness* that relied on *Goosmann* as an authoritative statement of California law for the general rule that child support awards are to be prospective only. But the majority overlooks the fact that the actual holding in *Goosmann* approved a *retroactive* child support award in reliance on Family Code § 4009. Specifically, it reversed the portion of a trial court's award that was retroactive to date before the request for child support was made to the court.

There was no need for the Ninth Circuit panel in *Visness* to discuss the actual holding in *Goosmann* because *Visness* did not present facts that could have been sufficiently retroactive to have accrued before the assignments were executed. The earliest possible retroactive date—the date of filing the action seeking child support—was after the execution of an assignment that did not encompass subsequently accruing rights. Thus, it was immaterial to the *Visness* court whether the date of accrual was the date of commencing the child support action or the date of deciding it.

While I agree with the majority and the trial court that the 1991 amendment to California Welfare & Institutions Code § 11350 does not create an independent support right that can be assigned, the majority pushes *Visness* too far when it purports to exclude the possibility of a retroactive award of child support.

## C

If the standard Form CA 2.1 was used to accomplish the assignment in this case, then the continuing monthly assignments would mesh with the retroactivity provision of Family Code § 4009 to capture the full amount of retroactive child support within the assignment.

For example, if monthly assignments are made in months 1–6 and in month 7 there is a child support award that is retroactive to month 2, then months 2 through 6 are covered by assignments.

## IV

I also disagree with the majority about which exception to the anti-assignment clause of § 523(a)(5)(A) applies.

The anti-assignment clause of § 523(a)(5)(A) provides that otherwise nondischargeable court-ordered child support is, with two exceptions, discharged if it is assigned. The two exceptions afford safe harbors to assigned debts.

The majority focuses upon the first exception: "debts assigned pursuant to section 402(a)(26) of the Social Security Act" are nevertheless excepted from discharge. And it ignores the second: "any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State."

The majority ignores the second safe harbor, which is commodious enough to protect any contractual assignment of rights that is made to a county government. The key is to have an assignment that actually assigns something. The assignments in *Ramirez* and *Visness* purported to assign only such rights as already existed at a time when no such rights existed. A change in the terms of the assignments would have led to a different result.

There are different terms of assignment in the standard California Form CA 2.1. There is an assignment of future rights that is ordinarily enforceable. *See TransWorld Airlines v. American Coupon Exchange, Inc.,* 913 F.2d 676, 685 (9th Cir.1990); Restatement(2d) of Contracts § 321; 1 B. WITKIN, SUMMARY OF CALIFORNIA LAW: CONTRACTS §§ 921–25 (9th ed.1987). And there are continuing assignments that, particularly when

taken in the context of Family Code § 4009, could also lead to a different conclusion.

We do not know precisely what form of assignment was actually executed by the custodial parent in this appeal. The majority and the trial court make the unwarranted assumption that it was the same contract of assignment as in *Ramirez* and *Visness*. Ignoring the second safe harbor is tantamount to erasing twenty-two words from the Bankruptcy Code. This we cannot do.

### V

It is apparent that there are omitted material facts in two respects. First, the assignments are not in the summary judgment record. Without the assignments, one cannot interpret the particular contracts to ascertain whether there ever was an assignment that applied to an actual child support order. Nor is there summary judgment evidence indicating when the child support action was filed or whether Family Code § 4009 is applicable.

Without the omitted material facts, it is impossible to determine that one of the parties is entitled to judgment as a matter of law as required by Rule 56(c).

Although the majority says that it will only consider arguments that are specifically presented by the parties, the inadequacy of the record is directly before us as we conduct our de novo review. One aspect of de novo review of a summary judgment is that we must determine for ourselves whether, based on the summary judgment record, a party is entitled to judgment as a matter of law as required by Rule 56(c). *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 (9th Cir.1993). Based on this record, we lack information adequate to determine whether either party is entitled to judgment as a matter of law.

Moreover, the underlying issue is itself a question of law—the law requires a focus upon the terms of the actual assignment, without which it is impossible to resolve the matter.

The rule that an argument not raised below is waived is a rule of discretion, not a rule of appellate jurisdiction. *E.g.* 11 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE 3D § 56.41[3][c] (1998). Exceptions are commonly made where, as here, the issue involves solely a question of law. *Koehring Co. v. Nolden (In re Pacific Trencher & Equip., Inc.)*, 735 F.2d 362, 364 (9th Cir. 1984); *Telco Leasing v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir.1980). Exceptions are also made when, as here, injustice would result. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Donovan v. Crisostomo*, 689 F.2d 869, 874 (9th Cir.1982).

Indeed, in a nearly-identical situation the Ninth Circuit has vacated and remanded a summary judgment (with apologies to the appellate court) because of a factual gap first identified on appeal. *Roberts v. Hollandsworth*, 582 F.2d 496, 499–500 (9th Cir.1978).[13]

I would vacate and remand for further proceedings.

Accordingly, I dissent.

---

**13.** The Ninth Circuit noted:
Well knowing the exceptionally heavy burden placed on our trial judges, we recognize that they should not be required to act as counsel, as well as judges, and consequently, advance legal theories not mentioned nor pursued by the advocates. We at the appeal level, in our somewhat cloistered atmosphere, have a substantially better opportunity to study and analyze a problem such as here presented.
*Roberts*, 582 F.2d at 500.