FILED

NOT FOR PUBLICATION

MAR 13 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  HI-11-1464-JuMkTa |
| | BAP No.  HI-11-1468-JuMkTa |
| JIM SLEMONS HAWAII, INC., | BAP No.  HI-11-1475-JuMkTa |
| | (cross-appeals) |
| Debtor. | |
| | Bk. No.  09-01802 |
| JIM SLEMONS HAWAII, INC., | |
| Appellant/Cross-Appellee, | |
| v. | M E M O R A N D U M* |
| CONTINENTAL INVESTMENT COMPANY, LTD., | |
| Appellee/Cross-Appellant, | |
| v. | |
| U.S. Trustee; SHM, INC., dba Car Stereo Express; TONY HAWAII CORP., | |
| Appellees. | |

Argued and Submitted on February 21, 2013
at Pasadena, California

Filed - March 13, 2013

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Lloyd King, Bankruptcy Judge, Presiding.
_____

Appearances:    Anthony P. Locricchio, Esq., argued for Appellant
Jim Slemons Hawaii, Inc.; Jerrold K. Guben, Esq.,
of O'Connor Playdon & Guben LLP, argued for
Appellee Continental Investment Company, Ltd.
_____

_____

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Before:  JURY, MARKELL and TAYLOR, Bankruptcy Judges.

These cross-appeals arise from debtor Jim Slemons Hawaii, Inc.'s second motion to recuse bankruptcy Judge Robert J. Faris (Second Recusal Motion) from presiding over its bankruptcy case.

On October 12, 2011, this Panel affirmed Judge King's order denying debtor's first motion to recuse Judge Faris (First Recusal Motion) in <u>Jim Slemons Haw., Inc. v. Office of the U.S. Tr., et al. (In re Jim Slemons Haw., Inc.)</u>, BAP No. HI-10-1284. A few months prior to our ruling, on June 20, 2011, debtor filed its Second Recusal Motion. Judge King again decided the matter and denied debtor's motion by order entered August 3, 2011 (Recusal Order #2). One day before the issuance of that order, debtor filed an ex parte motion to reopen the Second Recusal Motion asserting, among other things, that "new matters" had arisen. Judge King denied debtor's motion to reopen by order entered August 3, 2011. Debtor now appeals these orders (BAP No. 11-1464).

Continental Investment Co., Ltd. (CIC) cross-appeals the bankruptcy court's ruling with respect to Recusal Order #2 (BAP No. 11-1475). CIC also appeals from the bankruptcy court's order denying CIC's motion for reconsideration of portions of Judge King's Memorandum Decision related to Recusal Order #2 (BAP No. 11-1468). For the reasons stated below, we DISMISS CIC's cross appeal with respect to Recusal Order #2 for lack of jurisdiction and AFFIRM the bankruptcy court's decisions in all respects.

# I. FACTS[1] AND PROCEDURAL BACKGROUND

Set forth below is a history of the relevant facts related to debtor's chapter 11[2] case and a summary of debtor's two motions for recusal and its allegations against Judge Faris.

Debtor filed its chapter 11 petition on August 10, 2009. Debtor was the lessee of several leases and sub-leases (Lease) with CIC, the lessor and fee owner of the underlying real property. The Lease was debtor's primary asset. The real property was expected to be condemned, in part, by the City and County of Honolulu in connection with the right of way for its new light rail system. Debtor, hoping to reap a profit from the condemnation action, listed a condemnation claim against the City of Honolulu in the estimated amount of $750,000 in Schedule B.

## A. Employment of Debtor's Attorney

On September 28, 2009, Anthony P. Locricchio, filed an application to be employed as debtor's attorney. After objections by the United States Trustee's (UST) office were resolved,[3] the court approved Locricchio's employment as

---

[1] Some of these facts are taken from our Memorandum Decision in In re Jim Slemons Haw., Inc., BAP No. HI-10-1284.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] In response to the UST's objections, Locricchio sent a letter to the UST threatening Rule 9011 sanctions. At the October 19, 2009 hearing on Locricchio's employment, UST Terri Didion told the bankruptcy court that she had searched

(continued...)

-3-

debtor's general counsel by order entered on January 1, 2010.

**B.    Postpetition Rent:   The November 9, 2009 Order**

Shortly after the bankruptcy filing, on August 25, 2009, CIC moved for the timely payment of postpetition rent under § 365(d)(3) (Postpetition Rent Motion).  On October 8, 2009, debtor opposed the motion on the ground that CIC lacked standing to bring the motion because the motion and memorandum in support occasionally referred to CIC as Consolidated Investment Company, Ltd.  Debtor made no other arguments in opposition.

On the morning of October 19, 2009 - the day of the hearing on CIC's motion - debtor filed a pleading labeled as a motion (Rent Offset Motion) without notice of a hearing date.  In the motion, debtor sought to (1) obtain a $85,000 credit against rent payments due CIC for the remainder of August and all of September; (2) pay the October rent; and (3) set an evidentiary hearing for the resolution of various disputes between debtor, CIC and others.

At the October 19, 2009 hearing, the bankruptcy court informed Locricchio that it had not read debtor's papers which

---

[3](...continued)
Locricchio's bankruptcy experience through databases in Michigan, California and Hawaii.  Didion reported that she found two cases that he worked on, one of which was the instant case.  According to Didion, her objection to the employment of Locricchio based on his lack experience was founded on good faith and after a reasonable inquiry.  She also noted that Curtis Ching, the Assistant UST, responded to the employment application because she was on vacation when the application came in.  Didion told the judge that she was, however, the trial attorney assigned to the case.  Hr'g Tr. 10/19/09 at 14-15.  Locricchio has identified himself as an expert in condemnation cases.  Hr'g Tr. 7/28/11 at 45:1-3.

were filed that morning because they were untimely. In granting CIC's Postpetition Rent Motion, the bankruptcy court stated:

> With regard to the motion for payment of rent, I'm – I'm going to grant that motion and leave for another day the question of – I understand the October rents going to be paid promptly, and I'll leave for another day the – the question of whether the August and September rents have to be paid, and if they're not what consequences the non-payment would have. Hr'g Tr. 10/19/09 16:24-25; 17:1-4.

The court granted CIC's motion by order entered on November 9, 2009 (November 9 Order). The order stated in relevant part:

> IT IS FURTHER ORDERED ADJUDGED AND DECREED that Jim Slemons Hawaii, Inc. is directed to timely pay the monthly rent or a pro rated amount of monthly rent for the post-petition period from the petition date, August 10, 2009, to the present and continue to make payments pursuant to Section 365(d)(3), until further Order of this Court.

The order included signature lines for Locricchio and Didion, the UST, to indicate their approval as to the form of the order. The signature lines were blank when the bankruptcy court signed and entered the order. The BNC Certificate of Service showed that after entry of the order it was served on debtor and Locricchio. Debtor did not appeal the November 9 Order and it became a final order in the case. As further discussed below, this order forms the crux of the dispute with respect to debtor's Second Recusal Motion.

**C. CIC's Motion to Terminate The Lease**

Under § 365(d)(4)(A) and (B), the deadline for debtor to assume the Lease or move for an extension of time to assume was early December 2009. Debtor neither filed a motion to assume the Lease nor did it move to extend the time to assume the Lease within the statutory time period.

-5-

On December 23, 2009, CIC filed a motion (Lease Termination Motion) seeking a declaration from the bankruptcy court that the Lease was terminated and an order directing debtor to surrender the premises.

On January 8, 2010, debtor filed an opposition, contending, among other things, that its Rent Offset Motion barred CIC from seeking to terminate the Lease until the court ruled on the various disputes. Debtor further asserted that its Rent Offset Motion made clear that it had assumed the unexpired lease under § 365(d)(4). Finally, debtor maintained that once CIC filed its Postpetition Rent Motion, it was barred from claiming that debtor had not assumed the Lease.

At the January 19, 2010 hearing, the court took the matter under advisement due to debtor's complaint that CIC gave debtor twenty-seven days notice instead of twenty-eight days. The court gave debtor until February 11, 2010, to file a supplemental memorandum and CIC's counsel was given to February 18, 2010, to file a reply.[4] Debtor requested a further extension to February 18, 2010, which the bankruptcy court granted, and the time for CIC's reply was extended to February 25, 2010.

In debtor's supplemental pleading filed on February 18, 2010, debtor accused the bankruptcy judge of being biased and stated that it would be filing a motion to disqualify him.

---

[4] CIC filed its motion on December 23, 2009, and the hearing was set for January 19, 2010. Because the motion was filed during the holiday season and Locricchio did not participate in the court's non-mandatory electronic filing system which provides immediate notice, the court gave debtor additional time.

-6-

On February 22, 2010, before the filing of CIC's reply, the bankruptcy court issued a Memorandum Decision, finding that the Lease was rejected on December 9, 2009, by operation of law under § 365(d)(4). The bankruptcy court rejected debtor's argument that its Rent Offset Motion constituted a properly noticed and timely motion to assume the Lease. The court also observed that a debtor must pay postpetition rent under § 365(d)(3) even if it later decided to reject the lease. Finally, because debtor had mentioned in its papers that it intended to file a motion for recusal, the bankruptcy judge addressed the issue in the Memorandum Decision, concluding there was no basis for his disqualification.

The court entered judgment for CIC on March 3, 2010 (Termination Judgment).

**D. Debtor's First Recusal Motion**

On February 23, 2010 — one day after the court issued its Memorandum Decision terminating debtor's Lease — debtor filed its First Recusal Motion to disqualify Judge Faris. Debtor alleged that the judge overlooked CIC's procedural irregularities and considered pleadings it should have stricken. Specifically, debtor asserted that the court should have stricken CIC's Lease Termination Motion because of the insufficient notice (twenty-seven days instead of twenty-eight). Debtor also alleged that CIC's counsel was part of a "bankruptcy club," which was a social luncheon gathering of bankruptcy attorneys that the bankruptcy judge regularly attended and which excluded some attorneys from attending. Finally, debtor alleged that the court rushed out its February 22 Memorandum on CIC's

-7-

Lease Termination Motion due to the possible delay caused by debtor's notice of its yet-to-be-filed recusal motion.

Debtor's First Recusal Motion was set for hearing on April 26, 2010, before Judge King.[5] On April 7, 2010, debtor filed an ex parte motion to stay the hearing so that it could conduct an investigation into the court's internal procedures. The investigation would supposedly uncover whether Judge Faris had improperly back-dated his Memorandum Decision from February 24 to February 22 due to debtor's pending recusal motion. Judge King denied debtor's ex parte motion by Memorandum Decision and an order entered April 9, 2010.

At the April 26, 2010 hearing, Judge King denied debtor's First Recusal Motion.

On May 5, 2010, Judge King issued a Memorandum Decision, finding that (1) Locricchio had not offered any evidence that if luncheon meetings were held and Judge Faris participated, the attendees precluded him, or any other attorney, from attending; (2) although debtor had insufficient notice of CIC's motion to terminate the Lease, the notice deficiency resulted in no prejudice to debtor because Judge Faris gave debtor the opportunity to file a supplemental pleading; (3) debtor failed to cite any case law that would require a court to deny a motion (versus continuing it) due to insufficient notice; and (4) Judge

---

[5] A federal judge who is the subject of a recusal motion may hear that motion himself. United States v. Sibla, 624 F.2d 864, 867-68 (9th Cir. 1980). To avoid any appearance of conflict or bias, some districts or divisions use a procedure that has a different judge rule on a recusal motion. The District of Hawaii used this optional procedure.

-8-

Faris did not err by issuing his Memorandum Decision granting CIC's motion to terminate the Lease prior to the hearing on debtor's motion to disqualify him.  Judge King concluded by stating that debtor's allegations of bias against Judge Faris lacked factual and legal support.[6]

The bankruptcy court entered the order denying debtor's First Recusal Motion on May 5, 2010.[7]

Debtor appealed the ruling to this Panel.  The Panel summarily affirmed Judge King's decision denying debtor's First Recusal Motion in In re Jim Slemons Haw., Inc., BAP No. 10-1284, filed on October 12, 2011.[8]

**E.    The May 24, 2010 "Ambush" Hearing**

Meanwhile, Locricchio, debtor, CIC and the UST filed various motions.

On February 4, 2010, Locricchio filed an application for interim fees, requesting $39,647.40 for his services (Fee Application).  On February 25, 2010, the UST objected on the grounds that Locricchio failed to follow the UST's guidelines for fee applications or discuss any of the factors in § 330(a)

---

[6] Judge King commented that debtor's original and supplemental memoranda in support of its First Recusal Motion did not contain a single citation to a statute, rule, or reported case.

[7] On October 18, 2010, debtor filed a motion for reconsideration of the order denying debtor's First Recusal Motion.  The bankruptcy court denied the motion by order entered on October 29, 2010.  Debtor appealed that decision on November 30, 2010 (BAP No. 10-1469).  The Panel entered an order dismissing the appeal as untimely on February 1, 2011.

[8] Debtor has since appealed our decision to the Ninth Circuit.

to assist the court in determining the reasonableness of the fees. CIC also objected, arguing that its postpetition rent had administrative priority over debtor's counsel's fees.

On April 5, 2010, debtor moved to set aside the Termination Judgment under Rule 9023 (Set Aside Motion). Debtor's motion essentially rehashed the same arguments it made in its First Recusal Motion. In other words, the bankruptcy judge's alleged bias was debtor's sole argument for setting aside the Termination Judgment.

On April 7, 2010, CIC moved for payment of administrative rent for the period August 10, 2009 (the petition date), to December 9, 2009 (the rejection date)(Administrative Rent Motion). Debtor did not oppose the motion.

On April 26, 2010, the UST moved to dismiss debtor's case under § 1112(b) for "cause" (Dismissal Motion). The UST asserted that debtor had no possibility of a successful reorganization without the Lease. Debtor responded by stating that it would not oppose the motion.

These motions, along with debtor's Rent Offset Motion filed on October 19, 2009,[9] were noticed for a hearing on May 24, 2010. On appeal, debtor refers to this hearing as the "ambush" hearing.

On May 20, 2010, the bankruptcy court issued a tentative decision regarding the various motions. The tentative stated

---

[9] On January 12, 2010, debtor filed a notice that the Rent Offset Motion would be heard on February 16, 2010. Therefore, by the time debtor noticed the hearing, the date for assuming the Lease — December 8, 2009 — had passed. The hearing for the Rent Offset Motion was continued from February 16 to May 24, 2010.

the court would grant the UST's Dismissal Motion on the ground that debtor could not reorganize without the Lease, its primary asset. It further stated that the court was inclined to deny all other pending motions as moot due to its decision to dismiss the bankruptcy case.

At the May 24, 2010 hearing, the bankruptcy court granted the UST's Dismissal Motion. But then the court also decided that it needed to rule on debtor's Set Aside Motion and found it untimely. The court requested that the parties focus their arguments on whether the remaining motions (the Fee Application, Rent Offset Motion, and Administrative Rent Motion) should be addressed by the bankruptcy court or litigated in state court.

Debtor argued that the remaining motions should be litigated in state court. CIC argued that the matter of Locricchio's Fee Application and its request for administrative rent under § 365(d)(3) were within the bankruptcy court's exclusive jurisdiction. The UST argued for dismissal with the rent issue decided by the state court. The court took the matters under advisement.

In a May 27, 2010 Memorandum Decision, the bankruptcy court denied debtor's Set Aside Motion on the grounds that it was untimely and did not meet the standards for altering or amending a judgment; i.e., the debtor did not demonstrate a manifest error of law or fact or produce any newly discovered evidence. Citing Pavelich v. McCormick, Barstow (In re Pavelich), 229 B.R. 777, 780-81 (9th Cir. BAP 1999), the bankruptcy court also found that it had jurisdiction post-dismissal over its own orders and to dispose of ancillary matters that were otherwise not moot.

However, the court stated that it did not view its jurisdiction over the amount of the rent due under the Lease or compensation due debtor's attorney as exclusive. Nonetheless, the court found it would be unfair to avoid deciding the pending motions because debtor was holding $95,000 cash that, without a ruling, it could freely use after the dismissal of its case to the detriment of CIC. Accordingly, the court exercised its discretion to decide the remaining motions.

First, the court denied Locricchio's Fee Application in its entirety. The bankruptcy court found that Locricchio's services were not beneficial to the estate because he missed the deadline for assumption of the Lease under § 365(d)(4) and, as a result, debtor lost its most valuable asset. The bankruptcy court also denied the application on the alternative ground that it lacked information required by Rule 2016 and, although the UST had pointed out the deficiencies, Locricchio made no effort to correct them.

Next, the court denied debtor's Rent Offset Motion which alleged CIC's misconduct and interference with its business relationships was grounds for relieving debtor from the statutory requirement under § 365(d)(3) of paying postpetition rent for the months of August and September. The court observed that in response to debtor's allegation that CIC had wrongfully collected rent from Tony Honda, CIC had produced a 1998 letter agreement that authorized those payments. The court found that debtor had never offered any reason why the agreement might be invalid. Thus, the court concluded that there was no legitimate dispute that debtor owed the full amount of the rent due under

-12-

the Lease, minus any amounts which the subtenants paid to CIC.

Third, the court granted CIC's Administrative Rent Motion. The court noted that debtor filed no opposition to this motion. The court further found that debtor failed to comply with its November 9 Order, which required debtor to timely pay all postpetition rents until further order. Therefore, the court directed debtor and its counsel to remit all of the estate's cash to CIC in partial satisfaction of CIC's administrative claim and reserved jurisdiction to enforce this requirement.[10]

The bankruptcy court entered the order denying Locricchio's Fee Application on June 29, 2010. The court entered the orders denying debtor's Set Aside Motion and Rent Offset Motion on July 13, 2010, and the corresponding judgments on July 26, 2010. The court entered the order granting CIC's Administrative Rent Motion on July 13, 2010, and corresponding judgment on July 26, 2010. Finally, the bankruptcy court entered the order granting the UST's Dismissal Motion on July 13, 2010.

Debtor timely appealed each of the orders, which we affirmed in In re Jim Slemons Haw., Inc., BAP Nos. 10-1403, 10-1404, 10-1405, filed October 12, 2011.[11]

**F.   Debtor's Second Recusal Motion**

On June 20, 2011, debtor filed its Second Recusal Motion, the subject of these cross-appeals. The overall tone of debtor's motion showed that it was unhappy about losing the

---

[10] In response, debtor filed an interpleader action in the Hawaii District Court.

[11] Debtor also appealed our decision on those matters to the Ninth Circuit.

-13-

Lease, which, in turn, caused it to allegedly lose over one million dollars due to the pending condemnation action. This loss, debtor suggested, occurred due to the misconduct of Mr. Guben, CIC's attorney, and Curtis Ching, the Assistant UST. That misconduct, debtor argued, was overlooked by Judge Faris because Guben, Ching and Judge Faris are all part of an "Old Boys Network." Thus, according to debtor, Judge Faris showed favoritism towards Guben and Ching and this caused the Judge to take the steps that he did.

In its motion, debtor placed the propriety of the November 9 Order at issue. Debtor alleged that Guben intentionally altered the November 9 Order to include August and September rents even though the bankruptcy court had not ordered those rents to be paid. Debtor argued that CIC did not send copies of the "proposed secret order" to debtor or the UST's office in violation of LBR 9072(d)(2). Debtor then alleged that the court "in cooperation with or in dereliction of duty approved the false secured order absent signatures as to form of the order. . . ." In the end, debtor argued that the fraudulent order caused debtor to default under the lease which virtually ended the bankruptcy.[12]

After debtor filed the motion, Judge King directed CIC and its counsel to file a responsive pleading to debtor's motion by an order dated June 23, 2011. CIC filed its response on July 7, 2011. On July 13, 2011, Judge King issued an Order for

_____

[12] Of course debtor overlooks the fact that it never assumed the Lease within the time limits under § 365(d)(4).

-14-

Supplemental Memorandum directing CIC to file a supplemental response "specifically addressing the contents and propriety of the [November 9 Order] and the circumstances surrounding the submission to the court of the proposed order. . . ."

On July 20, 2011, Ching filed his declaration with the bankruptcy court. Ching declared that he attended the October 19, 2009 hearing on CIC's motion for the payment of postpetition rent, that the UST did not take a position on the motion, and that on October 21, 2009, he received an email from CIC with the proposed form of the November 9 Order, which was also sent to debtor's counsel. Ching declared that he did not oppose the proposed November 9 Order.

On July 21, 2011, CIC filed its supplemental memorandum. In that pleading, CIC addressed, among other things, the procedures surrounding the entry of the November 9 Order. CIC did not explain why it submitted an order to the bankruptcy court which was apparently inconsistent with Judge Faris' oral ruling at the October 19, 2009 hearing. On the same day, CIC filed Guben's declarations. Attached to one declaration were emails from Guben's office to the UST and Locricchio with the proposed order and the letter to Judge Faris regarding the circulation of the proposed order to Locricchio and UST Didion. Guben's second declaration set forth the chronological events in the bankruptcy case, which also referenced Guben's handling and circulation of the proposed November 9 Order.

On July 26, 2011, debtor responded. Debtor again alleged that Ching, along with Guben and Judge Faris, participated in the entry of the fraudulent November 9 Order. Debtor raised

-15-

numerous examples of alleged impropriety and bias, including: (1) Guben sent the proposed November 9 Order to Ching, instead of Didion, who was the UST assigned to the case; (2) Judge Faris approved the fraudulent order that was submitted without any signature of approval of the form of the order; and (3) there was no evidence that Guben served the proposed order on Locricchio. In addition, debtor provided a list of thirty "facts" that were allegedly "admitted" by Guben and Ching that demonstrated their misconduct. These facts were reiterations of the three points outlined above.

**The Hearing**

On July 28, 2011, the bankruptcy court heard the matter. The transcript shows that the Judge King patiently listened to Locricchio's arguments regarding Guben and Ching's alleged misconduct surrounding the entry of the November 9 Order.

Near the beginning of the hearing, Locricchio stated on the record that he "did not get the order" (referring to the November 9 Order). Hr'g Tr. 7/28/11 5:21-22, 6:1-14, 20-21. Locricchio also argued at length about Guben submitting the proposed November 9 Order to Ching, rather than Didion who was not, in his opinion, a member of the "Old Boys Network." Id. at 9:14-15. Locricchio argued that Ching had "no authority to oppose the order. He had been specifically excluded." Id. at 21:21-24. At another point, Locricchio stated that he had filed a motion to remove Mr. Ching.[13] "That problem was solved on the

---

[13] Indeed, Judge King later states in his Memorandum Decision that Locricchio never filed such a motion nor were we (continued...)

record by Ms. Didion stating that she was the attorney." Id. at 39:4-8.

Judge King, in turn, questioned Locricchio about when he learned about the discrepancy in the order regarding the August and September rents and whether he ever moved for an order for reconsideration or appealed the November 9 Order. The transcript shows that Locricchio never directly answered the Judge's question about when he learned about the discrepancy. Further, Locricchio stated that he did not file a motion for reconsideration because of Judge Faris' bias stating: "Wise attorney practice says never file a motion to reconsider when you know the judge is going to rule against you." Id. at 15:12-13.

Finally, although Locricchio never filed an appeal of the November 9 Order, he alludes at the hearing that he had in fact done so. Id. at 11-14, 30-32, 43. After a lengthy discussion about these things, Locricchio again stated that the order "did not come to me period." Id. at 28:16-17. However, he later admitted that he did get the order after it was entered. Id. at 29:13. At that point, the court advised Locricchio that he should have done something to get the order corrected. Id. at 29:21-25.

The hearing on the Second Recusal Motion also covered numerous other subjects related to Locricchio's conduct during the case. Locricchio admitted on the record that he was

_____

[13](...continued)
able to locate one on the docket.

representing both Jim Slemons and Jim Slemons Hawaii, Inc. during the bankruptcy case, but that fact was never disclosed to the court. Id. at 17:3-14. It also came out that Mr. Slemons was making unauthorized loans to the debtor. Id. at 18. Locricchio sent a check from his client trust account to pay CIC's rent, but CIC ultimately returned that money to Locricchio. Locricchio argued that the money was Mr. Slemons', not the debtor's. Although Judge Faris ordered Locricchio to return the funds, Locricchio filed instead an interpleader action in the Hawaii District Court. Id. at 18, 53-54.

Locricchio also accused Judge Faris of being biased when he denied Locricchio's application for fees in its entirety. Locricchio claimed that he did not act to "adopt the lease I knew my client couldn't pay" so it was "ridiculous" that Judge Faris denied Locricchio's fees on the ground that his services were not beneficial to the estate because he missed the deadline for assuming the lease. Id. at 48. Locricchio also pointed to Judge Faris' failure to hold a hearing on the Rent Offset Motion as a further example of his bias. Id.

Guben then argued about the procedures surrounding the entry of the November 9 Order. He maintained that it was sent by email to Locricchio and Ching for their comments. He stated that it went to Ching because Ching appeared at the October 19, 2009 hearing. Guben pointed out that the transcript from the October 19, 2009 hearing, which his firm ordered, was lodged with the court on October 22, 2009. Id. at 66. Guben maintained that he sent a letter on October 26, 2009, to Judge Faris that attached the proposed form of order he was going to

-18-

lodge pursuant to LBR 9021-1(a) and (b).  The letter and order went to Didion by email and to Locricchio, not only by email but also facsimile.[14]

Judge King then questioned Guben on why the November 9 Order was inconsistent with the Judge Faris' verbal ruling.  Id. at 66.  Guben stated that he thought the order was consistent with the judge's ruling.  Id. at 67:6-8.  Guben reiterated that Ching, Locricchio, Didion and the judge all had an opportunity to review the transcript and the order.  Id. at 67:16-22.

Finally, Didion argued that Ching's declaration was submitted to the court so that the court would know that the order was emailed to the office of the UST.  Id. at 71:6-8.  The court then took the matter under submission.

**The August 3, 2011 Memorandum Decision**

In his August 3, 2011 Memorandum Decision, Judge King found that debtor's Second Recusal Motion did not meet the standard for disqualification under 28 U.S.C. § 455 and applicable Ninth Circuit case law because debtor did not come forward with any extrajudicial sources evidencing bias.  Judge King also concluded that debtor's arguments in its papers and at oral argument had no merit.  Judge King found that (1) there was no evidence that the November 9 Order was entered fraudulently, in secrecy, or with any bias against debtor; (2) there was no requirement under the applicable local rule that the order

---

[14] Locricchio argued at the hearing that the reputed service on him by ECF was false because he was not an ECF filer.  However, Guben never asserted that Locricchio was served by ECF; he said by email and/or facsimile.

contain signatures of counsel for the debtor or the UST; (3) the October 26, 2009 letter transmitting the proposed order to Judge Faris indicated that copies had been provided to counsel for the debtor and counsel for the UST; (4) Judge Faris waited an additional period of time to see if there were any objections to the proposed order; and (5) there were no objections and the order was eventually entered on November 9, 2009.

Judge King also noted that CIC stated in a sworn declaration that it complied with the local bankruptcy rules in preparing and circulating a proposed order. The UST also submitted a sworn declaration by Ching stating that it received the proposed order sent by counsel for CIC and made no objections. The exhibit, a copy of the email correspondence sent by counsel for CIC attached to the UST's declaration, identified Locricchio to be a recipient of the email correspondence and proposed order. In the end, Judge King did not believe Locricchio had not received the filed November 9 Order when the BNC Certificate of Service and the Clerk of the Court both indicated that the debtor and Locricchio received notice of the entry of the November 9 Order.

Tellingly, Judge King concluded that Locricchio provided no reasonable excuse as to why he waited to advise the court of the problems with the text of the November 9 Order until 18 months after its entry. "The best explanation Locricchio gave was that it would have been a waste of time to seek to have the order corrected, given the bias of the presiding judge against debtor's counsel." The court found this explanation "wholly unsatisfactory." In short, Judge King found Locricchio had it

-20-

in his power to have this matter promptly addressed and corrected, but he failed to do so.

Judge King concluded by finding debtor's Second Motion to recuse Judge Faris was without factual or legal support. The court entered the order denying debtor's Second Recusal Motion on August 3, 2011.

### Debtor's Motion to Reopen

On August 2, 2011, the day before the court issued its Memorandum Decision, debtor filed an ex parte motion to reopen the matter. Debtor sought this relief on the grounds that CIC had ordered a transcript of the July 28, 2011 hearing, debtor's counsel received a call from a clerk of the court concerning the date of a notice of appeal filed by debtor, and unspecified "new matters" were alleged to have arisen. The court denied the ex parte motion on the grounds that there was nothing extraordinary about counsel ordering a transcript, the call from the clerk was to remind debtor to supply the date of the filing of his notice of appeal and the "new matters" were not stated in any detail and thus could not be the basis for reopening. On August 3, 2011, the court entered the order denying debtor's motion to reopen.

### CIC's Motion for Reconsideration

On August 3, 2011, CIC filed a motion for clarification or reconsideration of the August 3, 2011 order and memorandum. CIC requested that the court modify certain language in the decision pertaining to "inconsistencies" between Judge Faris' oral ruling at the October 19, 2009 hearing and the language in the November 9 Order. That "inconsistency" had to do with whether

or not the August and September rents were to be included in the order.

According to CIC, as a matter of law,[15] there could be no offset of a prepetition claim against a postpetition debt. CIC also argued that the court could not delay the payment of the postpetition rent beyond October 11, 2009 under § 365(d)(3) "excuse period". CIC maintained that debtor never requested to be excused from timely paying the postpetition rent. Therefore, CIC argued that Judge Faris knew, as a matter of law, that debtor was not eligible for a 60-day "excuse" or delay to pay the postpetition rent for the months of August and September 2009.

CIC also argued that Judge King's interpretation of Judge Faris' comments at the October 19, 2009 hearing was contrary to the specific language of § 365(d)(3). CIC contended that the court's interpretation made it seem like Judge Faris was giving debtor an open-ended extension or delay until it had to pay postpetition rent under § 365(d)(3).

**The August 18, 2011 Memorandum Decision**

In its August 18, 2011 Memorandum Decision, the bankruptcy court denied CIC's motion for reconsideration for several reasons. First, because debtor's Second Recusal Motion alleged a discrepancy between Judge Faris' statements at the October 19, 2010 hearing and the November 9 Order, Judge King made clear that he assumed, but did not decide, that certain discrepancies

_____

[15] This "law" was submitted to Judge King for the first time in the reconsideration motion.

-22-

did in fact exist.  Second, Judge King noted that CIC was given three opportunities to present its side of the discrepancy issue.  Judge King concluded that CIC had ample opportunity to present the arguments set forth in its motion to reconsider, but did not.  Finally, Judge King found that hearing CIC's motion to reconsider would serve no purpose because the issue before the court was whether or not to disqualify the presiding bankruptcy judge, not debtor's claim of a discrepancy between the judge's verbal ruling and the written order prepared by CIC's counsel.  Judge King stated that his ruling on the motion to disqualify would not change even if he assumed no discrepancy.  Accordingly, Judge King denied the motion by order entered on August 18, 2011.

**G.    The Appeals**

Debtor timely appealed the orders denying its Second Recusal Motion and motion to reopen (BAP No. 11-1464).  CIC timely filed its appeal of the order denying CIC's motion for reconsideration (BAP No. 11-1468) and timely filed its cross appeal of the order denying Debtor's Second Recusal Motion (BAP No. 11-1475).[16]

## II.    JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b).  We have jurisdiction under

---

[16] After the briefs were submitted, CIC submitted additional authorities to the Panel on February 6 and 14, 2013.  Although we have reviewed the additional authorities, we do not find them pertinent to the issues on appeal.

-23-

28 U.S.C. § 158.[17]

### III. ISSUES

A.    Whether the bankruptcy court erred in denying debtor's Second Recusal Motion;

B.    Whether the bankruptcy court erred in denying debtor's motion to reopen;

C.    Whether the bankruptcy court erred in denying CIC's motion for reconsideration of the Second Recusal Motion.

### IV. STANDARDS OF REVIEW

We review under an abuse of discretion standard a bankruptcy court's decision to (1) deny a motion for recusal of a bankruptcy judge; (2) deny a motion to reopen; and (3) deny a motion for reconsideration under Rule 9023. See Berry v. U.S. Tr. (In re Sustaita), 438 B.R. 198, 208 (9th Cir. BAP 2010) (motion for recusal); Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 331 (1971) (motion to reopen); Diker v. Dye (In re Edelman), 237 B.R. 146, 150 (9th Cir. BAP 1999) (reconsideration under Rule 9023).

A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

---

[17] On October 13, 2011, the BAP issued a Clerk's Order Re Finality, indicating that the appeals might be interlocutory and requiring a response from the parties. The Panel received and considered the responses and issued an order on January 6, 2012, finding the orders on appeal were final.

-24-

## V. DISCUSSION

**A. The Bankruptcy Court Did Not Abuse Its Discretion In Denying Debtor's Second Recusal Motion (BAP No. 11-1464)**

"A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises, or, if appropriate, shall be disqualified from presiding over the case." Rule 5004(a). Section 455 of Title 28 provides:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

In evaluating recusal motions, we start from the premise that "[j]udicial impartiality is presumed." First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir. 2000); see also Liteky v. U.S., 510 U.S. 540, 554-55 (1994).

Evaluations of bias or prejudice are judged from an objective perspective; "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Seidel v. Durkin (In re Goodwin), 194 B.R. 214, 222 (9th Cir. BAP 1996); Liteky, 510 U.S. at 548. The reasonableness test is "limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into

-25-

question." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993). However, "factual allegations do not have to be taken as true," and "[t]here is as much obligation for a judge not to recuse when there is no occasion . . . to do so as there is . . . to [recuse] when there is. A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1501 (10th Cir. 1994).

Generally, allegations of bias or prejudice must stem from some extrajudicial source. Liteky, 510 U.S. at 550-55. If there is no evidence of extrajudicial sources of bias or prejudice, then a charge of impartiality has to be supported on evidence that the judge exhibited "such a high degree of favoritism or antagonism to make fair judgment impossible." Id. at 554-55.

Debtor alleged that Judge Faris had a relationship with Guben and Ching because they were all part of what debtor refers to as an "Old Boys Network". What that exactly means is not readily apparent from the record. Instead, what is apparent is that debtor's vague accusations about the relationship and resulting bias have no factual support in this record. Further, even if such a relationship existed, evidence of which is not in the record, it does not follow that the relationship was sufficient to demonstrate personal bias or an inability to be impartial. Social acquaintances, friendships or associational relationships are rarely grounds for recusal. See Sexson v. Servaas, 830 F.Supp.475, 482 (S.D. Ind. 1993) (judge's social or associational relationship was not grounds for recusal); Clay v.

-26-

Doherty, 608 F.Supp. 295 (N.D. Ill.1985) (judge's acquaintance with key witness in civil rights case did not justify recusal); M.K. Metals, Inc. v. Nat'l Steel Corp., 593 F.Supp. 991, 994-95 (N.D. Ill. 1984) (judge's friendship with the principal of a "think-tank" that was providing an expert witness to the defendant did not justify recusal); United States v. Conforte, 457 F.Supp. 641 (D. Nev. 1978), aff'd, 624 F.2d 869, cert. denied, 449 U.S. 1012 (1980) (recusal not required in criminal case in which defendant had dozens of social encounters with judge at bridge tournaments, despite the fact that the judge had publicly expressed a negative impression of the defendant).

Debtor would like us to infer from the alleged "Old Boys Network" relationship that Judge Faris showed favoritism towards Guben and Ching and bias against debtor when he entered the November 9 Order. The factual record does not reasonably support such an inference. Indeed, the record shows that there was nothing sinister going on when Judge Faris entered the order. Rather, the facts show that the November 9 Order was properly served on debtor and Locricchio prior to and after its entry. Although Locricchio maintained that he never received the proposed order, Judge King did not believe him when the emails in evidence and Guben's declaration showed otherwise. Furthermore, the BNC Certificate of Service clearly showed that Locricchio received the order after it was entered. The transcript of the October 19, 2009 hearing was readily available for all parties to review prior to the entry of the order, but at no time did Locricchio review the transcript. Locricchio

-27-

also did not appeal the November 9 Order[18] nor could he tell Judge King exactly when he learned about the so-called discrepancy in the order. We do not think a reasonable person, possessing knowledge of these facts, could plausibly question Judge Faris' impartiality in entering the November 9 Order. In reality, debtor's Second Recusal Motion appears to have been fueled by its attempt to collaterally attack the November 9 Order which was not appealed. In any event, dissatisfaction with a ruling may present ample grounds for appeal, but it rarely - if ever - presents a basis for recusal. Liteky, 510 U.S. at 555.

On this record, we also cannot conclude that Judge Faris' handling of the May 24, 2010 hearing — the so-called "ambush" hearing — shows any "outward manifestation" of affirmative bias against debtor. Debtor complains about Judge Faris' failure to rule on its Rent Offset Motion, but Judge Faris denied the motion in his May 27, 2010 Memorandum Decision. Judge Faris did not rule on the motion any sooner because debtor failed to notice a hearing on the matter.

Debtor next complains that Judge Faris departed from his tentative ruling because of his bias against debtor. But Judge Faris' tentative decision was just that — tentative. Of course, Judge Faris could depart from that ruling after hearing oral argument from the parties. Debtor conveniently ignores the basis for Judge Faris' rulings on matters that the judge

---

[18] Locricchio continues to assert on appeal that he indeed filed an appeal to set aside the November 9 Order. His assertion is incorrect. This false assertion is troubling.

-28-

previously thought may be mooted by the dismissal of debtor's case. A huge issue was the fact that $95,000 remained in the DIP bank account. How did it get there? The record reflects that money came out of Locricchio's client trust account to pay CIC's postpetition rent and CIC returned that money to debtor. Locricchio then claimed the money was Jim Slemons. The record shows that Locricchio never obtained court authorization for Jim Slemons to loan debtor money to pay the rents. Based on these facts, Judge Faris perhaps was concerned, rightly so, that once debtor's bankruptcy case was dismissed, debtor could use the money for purposes other than the payment of CIC's administrative rent, which was ordered to be paid in the November 9 Order.

In short, Judge Faris' handling of the hearing does not indicate that he had any bias or prejudice against debtor. A reasonable person with knowledge of these facts could not conclude that Judge Faris exhibited "such a high degree of . . . antagonism [towards debtor] as to make fair judgment impossible." Liteky, 510 U.S. at 555. Finally, to the extent Judge Faris' rulings on the various orders are adverse rulings against debtor, such rulings are not grounds for disqualification, but grounds for appeal. Id. Debtor in fact appealed each of the orders that stemmed from the May 24, 2010 hearing and we affirmed Judge Faris' rulings on appeal.[19]

---

[19] As previously mentioned, debtor has appealed these decisions to the Ninth Circuit. Further, besides requesting recusal of Judge Faris, it is unclear what remedy debtor seeks for the alleged bias when its case has been dismissed. From what
(continued...)

As debtor has argued, it is best to look at the proceedings in this case in their entirety. Looking at the record as a whole, debtor's grounds for recusal of Judge Faris here are no more persuasive than in its first motion. Debtor implies that just about everyone involved in this case, with the exception of Didion, is part of the "Old Boys Network". At one point, debtor questions whether Judge King could be impartial. But none of what debtor complains about would have caused a reasonable person to question the impartiality of any judge who handled any part of this case. As stated before, the fact that a court rules against a party cannot, in and of itself, be grounds for recusal. This point needs no further elaboration.

In sum, Judge King properly identified the correct legal rules to apply to the recusal motion. On this record, we cannot say that his factual findings were illogical, implausible or without support in inferences that may be drawn from the facts in the record. Accordingly, Judge King did not abuse his discretion in denying debtor's Second Recusal Motion.

**B. The Bankruptcy Court Did Not Abuse Its Discretion in Denying Debtor's Motion to Reopen (BAP No. 11-1464)**

We have looked at the entire record in this matter and the defects in debtor's motion to reopen are similar to the defects in its Second Recusal Motion. There was simply no basis for debtor's motion.

---

[19](...continued)
we can tell, the only remaining aspect of the case is the distribution of the $95,000 which was left in the DIP bank account.

Factors for a trial court to consider when deciding to reopen a case are:

> (1) the importance and probative value of the evidence or arguments sought to be introduced, i.e., whether it is cumulative or might 'affect the outcome of the case by, for example, offering a new theory of liability or present a significant alteration of the evidence presented at trial[,]' (2) the moving party's diligence and explanation for failing to previously introduce the evidence or arguments, (3) the undue prejudice that the delay might cause the non-moving party, and (4) whether the court has already announced its decision.

In re W. Shore Assocs., Inc., 435 B.R. 723, 725 (Bankr. M.D. Fla. 2010). The Ninth Circuit has stated that "reopening a case for the purpose of introducing overlooked evidence must be done with extreme reluctance because of the undue emphasis given to the introduced evidence with consequent distortion of the evidence as a whole and the possibility that such prejudice will result to the other party as to require a mistrial." Eason v. United States, 281 F.2d 818, 822 (9th Cir. 1960).

Debtor's motion did not meet any of the standards for a motion to reopen. Its motion simply asserted vague and ambiguous arguments regarding "new matters" and offered no discussion as to what these matters were or how they would affect the outcome of the case. Further, as found by the bankruptcy court, the ordering of a transcript or the phone call by the court's clerk had nothing to do with the underlying merits of the Second Recusal Motion. Finally, debtor made no showing to excuse the untimeliness of the proposed introduction of new evidence. For these reasons, we conclude that Judge King's denial of the motion to reopen was not an abuse of discretion.

-31-

**C.  The Bankruptcy Court Did Not Abuse Its Discretion in Denying CIC's Motion for Reconsideration (BAP No. 11-1468)**

CIC contends that Judge King's findings regarding the discrepancy between Judge Faris' ruling at the October 19, 2010 hearing and the November 9 Order are incorrect as a matter of law.  We do not decide in this appeal whether or not the "findings" regarding the order were right or wrong.  In his Memorandum Decision, Judge King made clear that he did not decide there was in fact a discrepancy, but he simply assumed the discrepancy existed because debtor's Second Recusal Motion directly raised the issue.  Moreover, as pointed out by Judge King, the issue before him was whether the facts surrounding the entry of the November 9 Order demonstrated that Judge Faris was biased against debtor.  Judge King found those facts did not demonstrate bias.  Therefore, according to Judge King, regardless of the alleged discrepancy, Judge King's decision regarding the alleged bias would not change.  On this basis, there was really no reason for Judge King to reconsider his findings.

In addition, CIC had ample opportunity to make a record of its legal arguments to its liking on the issue, but did not do so until after the fact.  There were also no grounds for reconsideration — CIC did not present newly discovered evidence, demonstrate clear error, or show an intervening change in controlling law.  See Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986) (a motion to amend under Rule 52(b) is intended "to correct manifest errors of law or fact or, in some limited situations, to present newly discovered

-32-

evidence."); 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (setting forth grounds for reconsideration under Civil Rule 59(e)); see also Rules 7052 and 9023 (applying Civil Rule 52 and 59 to bankruptcy proceedings). Under these circumstances, we conclude that the bankruptcy court did not abuse its discretion by denying CIC's motion for reconsideration.

**D.  CIC's Cross Appeal of Recusal Order #2 (BAP No. 11-1475)**

Similar to its motion for reconsideration, CIC filed its cross appeal of Recusal Order #2 seeking to amend Judge King's findings. As stated, Judge King made clear in his Memorandum Decision that he did not decide the issue regarding the alleged discrepancy in the November 9 Order. Therefore, because the alleged discrepancy was not one of the issues adjudicated, CIC did not suffer an adverse impact from entry of Recusal Order #2. See Cobb v. Aytch, 539 F.2d 297, 300 (3d Cir. 1976) (appellants suffered no adverse impact from the decree and lacked standing).

Moreover, Judge King stated that if a discrepancy occurred, that fact was immaterial to his decision regarding recusal. The Supreme Court has held: "A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." Elec. Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242 (1939); see also N.Y. Telephone Co. v. Maltbie, et al., 291 U.S. 645 (1934) (appellant not entitled to an appeal from a decree for the purpose of reviewing portions of the decree that are not res judicata). For these reasons, because we lack jurisdiction over CIC's cross appeal of Recusal

-33-

Order #2, the cross appeal is dismissed.

## VI. CONCLUSION

Having determined that there is no basis for reversal of any of Judge King's decisions, we AFFIRM each of the orders on appeal.